UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SEIU HEALTHCARE MISSOURI/KANSAS, ) <br> A DIVISION OF SEIU HEALTHCARE ) <br> ILLINOIS & INDIANA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SIRO OP OAKWOOD, LLC d/b/a ) <br> OAKWOOD ESTATES NURSING & REHAB, ) <br> ) <br> Defendant. ) | No. 4:22-CV-1291 RLW |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff SEIU Healthcare Missouri/Kansas, a Division of SEIU Healthcare Illinois & Indiana's ("the Union") Motion for Default Judgment against Defendant SIRO OP Oakwood, LLC d/b/a Oakwood Estates Nursing & Rehab ("Defendant"). After careful consideration of the Union's Motion and the record in this case, and Defendant having failed to answer or otherwise defend this action, the Court will grant the motion in full.

**Background**

The Union filed its Complaint to Compel Arbitration against Defendant under Section 301 of the Labor Management Relations Act, as amended, 29 U.S.C. § 185 ("LMRA").

Defendant, a Delaware limited liability corporation, and the Union, a labor organization, entered into a collective bargaining agreement effective from March 1, 2021, through February 29, 2024 (the "Agreement") (ECF No 1-1). The Agreement covers the wages, fringe benefits, hours, and terms and conditions of employment of the employees employed by Oakwood performing work within the scope of the Agreement. The Agreement contains grievance and arbitration provisions in Articles 11 and 12. The arbitration provision states in part that a party

who has a "grievance that remains unsettled after having been fully processed pursuant to the provisions of the Grievance Procedure may be submitted to arbitration upon the written request of the Union or Employer[.]" Agreement, Art. 12, Sec. 1 (ECF No. 1-1 at 13.)

After Defendant allegedly failed to remit union dues, initiation fees, and reinstatement fees deducted from employees to the Union since October 4, 2021, in violation of Article 4 of the Agreement, the Union filed a grievance. Defendant failed to respond to or answer the grievance and the Union advanced the grievance through the Agreement's grievance procedure. The Union then notified Defendant of its intent to submit the grievance to arbitration. The Union requested a panel of arbitrators from the Federal Mediation and Conciliation Service and repeatedly requested, via email and regular first-class mail, that Defendant provide its availability to select an arbitrator from the panel. Defendant has not responded to any of the Union's requests to select an arbitrator from the panel of arbitrators sent by the Federal Mediation and Conciliation Service, and has failed and refused to select an arbitrator and to participate in the arbitration process outlined in the Agreement.

After the Union's letters and emails went unanswered, the Union filed the Complaint to Compel arbitration in this Court. The Complaint seeks an order from the Court compelling Defendant to participate in the arbitration process by selecting an arbitrator and proceeding to binding arbitration with the selected arbitrator. The Complaint also seeks attorneys' fees and costs incurred by the Union in having to file and pursue the Complaint.

Defendant was served with summons and Complaint on December 7, 2022, through its registered agent (ECF No. 7), but did not answer or otherwise plead in response to the Complaint's allegations. On February 7, 2023, the Clerk of the Court entered a Clerk's Entry of Default against Defendant pursuant to Rule 55(a), Federal Rules of Civil Procedure.

**Discussion**

Where the Clerk has entered default against a party, it has "no further standing to contest the factual allegations of plaintiff's claim for relief." Taylor v. City of Ballwin. Mo., 859 F.2d 1330, 1333 n.7 (8th Cir. 1988) (internal citation omitted).  Where a default has been entered, the "defendant is deemed to have admitted all well pleaded allegations in the complaint." Id. (internal punctuation and citation omitted). The Court's inquiry here is limited to whether the dispute about Defendant's failure to remit union dues, initiation fees, and reinstatement fees should be submitted to arbitration.

    A. Complaint to Compel Arbitration

This Court has jurisdiction over violations of contracts between an employer and a labor organization under Section 301 of the LMRA, 29 U.S.C. § 185, and 28 U.S.C.  1337. The Court has the power to enforce the arbitration provision of the parties' Agreement.

A party that seeks to compel arbitration must demonstrate the existence of a valid agreement to arbitrate and that the specific dispute at issue falls within the scope of that agreement. MedCam, Inc. v. MCNC, 414 F.3d 972, 974 (8th Cir. 2005) (citing Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., U.S.A., 334 F.3d 721, 726 (8th Cir. 2003)). "[T]he question of scope asks only whether the parties have agreed to arbitrate a particular claim and does not reach the potential merits of the claim." MedCam, 414 F.3d at 975. A presumption of arbitrability exists when an agreement like the present one contains an arbitration clause, and the Court will issue an order to arbitrate if the clause can be read to cover the asserted dispute. AT & T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 650 (1986); Local 38N Graphic Commc'ns Conf./IBT v. St. Louis Post–Dispatch, LLC, 638 F.3d 824, 826 (8th Cir. 2011).

3

The Union's Complaint and the attached exhibits show that the Union's grievance about Defendant's failure to remit union dues, initiation fees, and reinstatement fees falls within the Agreement's related grievance and arbitration clauses. The Grievance Procedure states, "For purposes of this Agreement, a grievance is defined as *a dispute that reasonably concerns the application, interpretation, or alleged violation of a specific provision(s) of this Agreement during its term*. A controversy as to any matter not specifically covered by an express provision of this Agreement shall not be subject to the grievance procedure." Agreement, Art. 11, Sec. 2 (emphasis added). The Arbitration provision states, "A grievance that remains unsettled after having been fully processed pursuant to the provisions of the Grievance Procedure may be submitted to arbitration upon the written request of the Union or Employer . . . ." Id., Art. 12, Sec. 1.

Under Article 4 of the Agreement, titled "Checkoff," Defendant agreed, among other things, to deduct from employees' paychecks on a monthly basis the Union dues or service fees. Agreement, Art. 4, Sec. 1. The Union's Complaint asserts that Defendant breached Article 4 by failing to remit union dues, initiation fees, and reinstatement fees since October 2021. The Agreement's arbitration provision, which uses the term "grievance" as defined in the Grievance Procedure provision, is readily susceptible to an interpretation that encompasses the Union's claims related to Defendants' alleged breach of its obligations under Article 4. "When the parties have agreed on an arbitration clause that appears to cover their dispute, it should be upheld." 3M Co. v. Amtex Sec., Inc., 542 F.3d 1193, 1199 (8th Cir. 2008.)

As a result, the Union is entitled to the specific relief on the request to compel Defendant's participation in the arbitration of the Union's grievance.

4

### B. Request for Attorneys' Fees and Costs

The Union also seeks its attorneys' fees and costs incurred in bringing its Complaint to Compel Arbitration. Generally, absent statutory authority or a contractual agreement, neither party to an action is entitled to recover attorney fees from the other party. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). Section 301 of the LMRA does not provide a statutory basis for the recovery of attorneys' fees, and the Union does not assert it has a contractual right to attorneys' fees under the Agreement.

The Eighth Circuit has authorized an award of attorneys' fees under Section 301 as a matter of equity, however, if the losing party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." American Fed'n of Musicians, Local 2-197, AFL-CIO v. St. Louis Symphony Soc'y, 203 F.3d 1079, 1082 (8th Cir. 2000) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991), and United Paperworkers Int'l Union v. Champion Int'l Corp., 81 F.3d 798, 801–02 (8th Cir.1996)). "[B]ad faith may exist where a party's claim is deemed to be totally without merit." Actors' Equity Ass'n v. Am. Dinner Theatre Inst., 802 F.2d 1038, 1042 (8th Cir.1986) (citation omitted). A court may factually determine that bad faith exists where a party's claim is "frivolous, unreasonable, or groundless, or [where the party] continued to litigate after it clearly became so." Id. (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421-22 (1978)).

Similar to the present case, Actors' Equity Association was an action to compel arbitration of a grievance under a collective bargaining agreement. 802 F.2d at 1040. The Eighth Circuit stated that "bad faith would be evidenced . . . by a showing that the appellants intentionally advanced a frivolous contention for an ulterior purpose, such as harassment or delay." Id. at 1043 (citation omitted). Because the appellants argued the agreement limited the scope of the duty to arbitrate,

5

the Eighth Circuit concluded that the appellants did not act in bad faith and reversed the district court's award of attorney fees. Id. at 1044-46.

Here, the Complaint's factual allegations, which Defendant is deemed to have admitted, Taylor, 859 F.2d at 1333 n.7, show that Defendant has failed to comply with the agreed-upon grievance and arbitration clauses of Articles 11 and 12 of the Agreement. The Union asserts that Defendant's failure and refusal to submit the grievance to arbitration and select an arbitrator is inexcusable considering the grievance clearly falls within the scope of the Agreement's grievance and arbitration clauses. The Union states that Defendant has no good faith basis not to submit the grievance to arbitration, and its repeated failure to select an arbitrator and submit the grievance to arbitration forced the Union to file a complaint to compel arbitration to enforce its contractual rights, even after it warned Defendant of its intention to file the instant Complaint if Defendant did not make arrangements to select and arbitrator from the panel. (See Straughter Aff. ¶ 32, Ex. G to Straughter Aff; Hansen Aff. ¶ 9, Ex. B to Hansen Aff.).

Here, Defendant failed to respond to the Union's demands to participate in the grievance procedure, and subsequently failed and refused its repeated demands to select an arbitrator and participate in arbitration of the grievance. Further, despite being served with process, Defendant failed to respond in this action and thus failed to offer any basis in fact or law to support a defense to the Complaint to Compel Arbitration. The Court is mindful that the purpose of grievance and arbitration clauses in collective bargaining agreements is to provide a quick and efficient method for the resolution of disputes without court intervention and additional costs, including attorneys' fees. See United Steelworkers of Am. v. Warrior and Gulf Navigation Co., 363 U.S. 574, 578 (1960) ("A major factor in achieving industrial peace is the inclusion of a provision for arbitration of grievances in the collective bargaining agreement."); Int'l Bhd. of Elec. Workers, Local Union

6

No. 545 v. Hope Elec. Corp., 380 F.3d 1084, 1101 (8th Cir. 2004) (deferential review of arbitration awards "reflects a congressional desire to promote efficient resolution of industrial disputes."). Based on Defendant's failure to participate in the contractual grievance and arbitration process, and its failure to offer any defense to the Union's Complaint, the Court finds Defendant acted in bad faith and/or for oppressive purposes, with the intent of delay or harassment.

Therefore, the Court will award the Union its attorneys' fees incurred in bringing its Complaint to Compel Arbitration as a matter of equity. See, e.g., Local 881 United Food & Com. Workers Union v. Food Club of Ind., No. 2:11-CV-161-TLS, 2011 WL 3501721, at *2 (N.D. Ind. Aug. 10, 2011) (awarding attorneys' fees in action to compel arbitration under LMRA § 301, stating, "Because the Defendant has not responded to the Plaintiff's repeated demands for arbitration, either before or after it filed this lawsuit, the Court infers that the Defendant's motive was 'to harass rather than to win.'"); Int'l Bhd. of Teamsters, Local Union No. 727, AFL-CIO v. Duchossois Indus., Inc., No. 92-8143, 1993 WL 41426, at *2 (N.D. Ill. Feb. 12, 1993) (awarding attorneys' fees in granting petition to compel arbitration under § 301, concluding the defendant's "motive was to harass rather than to win" when it did not respond to the plaintiff union's demands for arbitration until after it filed suit seeking to compel); see also Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Rousselot, Inc., 334 F. App'x 793, 795 (8th Cir. 2009) (unpublished per curiam) (reversing denial of motion to compel arbitration under LMRA § 301, remanding for consideration of union's request for attorney's fees).[1]

The Court finds the Union's attorney Amanda K. Hanson's hourly rates are reasonable for a commercial labor dispute, and the time she expended in prosecuting this action through default

---

[1] But see Int'l Union of Operating Eng'rs, Loc. # 965 v. S. Crider Constr. & Supply, No. 13-3425, 2014 WL 2609824, at *3 (C.D. Ill. June 11, 2014) (refusing to infer a motive of bad faith from the Defendant's failure to respond to plaintiff's Petition to Compel Arbitration under LMRA § 301).

judgment was reasonable and adequately documented. (ECF No. 14-2 at 1-11.) Ms. Hanson's Affidavit and supporting documentation support an award of attorneys' fees in the amount of $3,258.00.

The Court will also assess costs in the Union's favor as a prevailing party under Rule 54(d) of Federal Rules of Civil Procedure. Ms. Hanson's Affidavit lists for costs only the U.S. District Court filing fee of $402. (ECF No. 14-2 at 12). This is an allowable cost under 28 U.S.C. § 1920(1), which governs taxation of costs.

**Conclusion**

For the foregoing reasons, the Court will grant Plaintiff's Motion for Default Judgment in full, and will award it reasonable attorneys' fees as a matter of equity under Section 301 of the LMRA, and costs as a prevailing party. Defendant will be ordered to participate in the arbitration process established in the parties' Agreement by selecting an arbitrator and proceeding to binding arbitration with the selected arbitrator.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Default Judgment (ECF No. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant is directed to arbitrate Plaintiff's grievance pursuant to the terms of the parties' collective bargaining agreement, including to contact Plaintiff **no later than Monday**, **April 10, 2023** to select an arbitrator from the panel of arbitrators sent by the Federal Mediation and Conciliation Service by making alternative strikes from the panel (with SEIU Healthcare striking first as it was the party to request arbitration), to join Plaintiff in notifying the arbitrator of his/her selection, to cooperate with Plaintiff and the selected arbitrator in

8

scheduling an arbitration hearing in a reasonable period of time, and to then to promptly proceed to binding arbitration with the selected arbitrator as provided by the Labor Agreement;

**IT IS FURTHER ORDERED** that Plaintiff is awarded its reasonable attorneys' fees in the amount of Three Thousand Two Hundred Fifty-Eight Dollars ($3,258.00), and its costs of Four Hundred Two Dollars ($402.00).

An appropriate Default Judgment will accompany this Memorandum and Order.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 3rd day of April, 2023.